**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mardisco STAPLES and Delwin Brown, Defendants–Appellants.**

Nos. 99–1630, 99–1876.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1999.

Decided Feb. 2, 2000.

**994**

Kevin E. Byrnes, Office of the United States Attorney, Urbana, IL, Linda L. Mullen (argued), Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee.

David E. Bennett, Jonathan H. Bogaard (argued), Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant–Appellant Mardisco Staples.

Jonathan H. Bogaard, vedder, Price, Kaufman & Kammholz, Chicago, IL, Richard H. Parsons, Office of the Public Defender, Peoria, IL, for Defendant–Appellant Delwin Brown.

Before WOOD, JR., KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Mardisco Staples and Delwin Brown challenge the calculation of the sentences for their convictions for possession with intent to distribute crack cocaine. Staples and Brown pleaded guilty to the one-count indictment and, based on their individual criminal histories, were sentenced to 150 months and 292 months in prison, respectively. They contend that the district court erred in applying the United States Sentencing Guidelines, resulting in longer terms in prison than their criminal histories merited. The district court's interpretation of the Guidelines was reasonable and correct, and we affirm Staples' and Brown's sentences.

### I. History

On September 1, 1998, police in Champaign, Illinois, executed a search warrant at the home of Mardisco Staples and found 357.1 grams of crack cocaine, two guns and $2,784 in cash. Delwin Brown, Staples and Staples' brother, Burnell Staples ("Burnell"), were in the house at the time of the raid. All three were arrested, and Brown and Burnell made statements to the police implicating themselves and Staples in a drug trafficking operation between Chicago and Champaign. Brown had been sending couriers to Chicago every two or three days to pick up a half kilogram or more of crack and bring it to Champaign. Burnell told police that Brown had arrived just that day with a shipment of crack, which Brown and Staples broke down into smaller quantities for distribution. Burnell admitted that Brown had given him 7.4 grams that day. Brown confirmed the trips to Chicago had been taking place and, when asked if he had just received crack from his source, responded, "Yeah, you got it all didn't you?"

The grand jury indicted Brown and Staples, and the two entered guilty pleas. Brown was held accountable for 1.5 kilograms of crack, resulting in a base offense level of thirty-eight. He received a two-level increase for possession of the handguns and a three-level decrease for accepting responsibility for his crime. Based on his Presentence Investigation Report (PSR), his criminal history scored in category IV, under which an offense level of thirty-seven allows a range of 292–356 months imprisonment. The district court based the criminal history determination in part on Brown's previous convictions for reckless conduct and discharging an air rifle. On April 2, 1999, the court sentenced Brown to the bottom of that range.

Staples was held accountable for 357.1 grams for a base offense level of thirty-

four. He received the same adjustments, but the district court determined that his proposed criminal history category of VI over-represented the seriousness of his past crimes. With the government's approval, the court reduced his criminal history to category V and his base offense level to twenty-nine, making the appropriate range 140–175 months in prison. The district court calculated Staples' criminal history based on convictions for the same air rifle incident and also for driving with a suspended license. The court sentenced Staples to 150 months.

## II. Analysis

Staples and Brown challenge the computation of their criminal histories. Both men contend the district court committed error when it assessed one criminal history point for the municipal conviction related to discharging a weapon. Individually, Staples challenges the assessment of two points for his conviction for driving with a suspended license. Brown challenges the one-point assessment for reckless conduct.

### A. Brown's Waiver

■■■ The government contends that Brown waived his right to appeal the calculation of his criminal history at his sentencing hearing. Waiver occurs when a defendant intentionally relinquishes a known right. See United States v. Olano, 507 U.S. 725, 730–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Griffin, 84 F.3d 912, 924 (7th Cir.1996). Waiver extinguishes the error and precludes appellate review. See Olano, 507 U.S. at 733, 113 S.Ct. 1770. Brown believes that he did not waive his right to challenge the PSR, but merely forfeited it. Forfeiture is a doctrine related to waiver, but instead of precluding all appellate review, it permits plain error review. See id. at 730–34, 113 S.Ct. 1770. One forfeits his rights by failing to assert them in a timely manner. See id. at 733, 113 S.Ct. 1770. Where waiver is accomplished by intent, forfeiture comes about through neglect.

In United States v. Redding, 104 F.3d 96, 99 (7th Cir.1996), a defendant waived his right to appeal his criminal history calculation when he filed no written objections and did not verbally object at his sentencing hearing. Counsel for the defendant in Redding stated to the sentencing judge, "[a]t present, we accept for the purposes of this sentencing hearing the calculations regarding criminal history, although I believe that does not bind [the defendant] from possible collateral attack regarding these matters." Redding, 104 F.3d at 98 n. 1. We held that the defendant waived his right to appeal despite the fact that the defendant had objected to the criminal history at a pre-sentencing hearing. Id. at 99.

Here, the government makes an even stronger case for waiver. Despite being provided advance notice of the PSR's contents and an opportunity to object before and during the sentencing hearing, Brown and his counsel did not. According to Brown's counsel, the defendant "ha[s] not filed any objections. And I spoke with Mr. Brown this morning, and he indicated to me that we ... have no objections to the presentence report." Accordingly, we find that the defendant knew he had a right to object to the calculation of his criminal history, knew the contents of the report and affirmatively decided not to object. This decision shows intent to waive the right, not ignorance or neglect of the right. The defendant therefore has waived his right to appeal the calculation of his criminal history.

### B. Staples' Appeal

#### 1. The Discharging a Weapon Conviction

■■■ Staples argues that his conviction for discharging a weapon should not have been counted in his criminal history because the Guidelines specifically exclude convictions for local ordinance violations, except in limited circumstances. See U.S. Sentencing Guidelines Manual § 4A1.2(c)(1). The Guidelines, however,

permit counting "local ordinance violations that are also criminal offenses under state law." *Id.* The question today is whether Staples' conviction for discharging a weapon was a criminal offense under Illinois law. We review *de novo* a sentencing court's conclusions of law. *See United States v. McClanahan,* 136 F.3d 1146, 1149 (7th Cir.1998).

Police arrested Staples and Brown on August 14, 1995, and charged them with "shooting a Crossman 760 Pumpmaster pump air rifle at street lights and at a train." Staples pleaded guilty on February 16, 1996, to discharging a weapon and was fined $280. The Illinois Air Rifle Act, 720 Ill. Comp. Stat. 535/3 (West 1993), makes it "unlawful for any person to discharge any air rifle from or across any street, sidewalk, road, highway or public land or any public place except on a safely constructed target range." Shooting an air rifle at street lights and a train violates this section and therefore must be counted under § 4A1.2(c).

■■■ Staples nonetheless argues that the government did not carry its burden of proof on this issue when it failed to cite the air rifle statute at sentencing. However, in the matter of exclusions from Guidelines calculations under § 4A1.2(c)(1), the defendant and not the government carries the burden of proof. *See United States v. Booker,* 71 F.3d 685, 688 (7th Cir.1995). The government's failure to cite the state law similar to the local ordinance was not error since the government did not carry the burden of proof on this issue.

■■■ Next, Staples argues that the air rifle conviction should be excluded because it was similar to "disorderly conduct or disturbing the peace," which would not be counted in this situation. Under Illinois law, a person commits disorderly conduct when he knowingly "does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 Ill. Comp. Stat. 5/26-1(a)(1). While Staples and Brown obviously violated this section when they shot the air rifle, there are few offenses—felonies

or misdemeanors—that do not satisfy this definition. The question is not whether they disturbed the peace, but whether their criminal conduct most appropriately should be considered as one of those offenses "similar to [disturbing the peace], by whatever name they are known." U.S.S.G. § 4A1.2(c)(1). We look to the actual offense conduct and the sentence deemed appropriate by the sentencing judge to determine if the acts are similar. *See United States v. Boyd,* 146 F.3d 499, 501-02 (7th Cir.1998).

■■■ The fact that the Illinois General Assembly saw fit to criminalize air rifle offenses separately rather than leave it to the disorderly conduct statute provides at least some evidence that lawmakers considered the offense *dissimilar* to disturbing the peace. Disturbing the peace in Illinois is a Class C misdemeanor, punishable by up to a year in jail. *See* 720 Ill. Comp. Stat. 5/26-1(b)(1). Discharging an air rifle is a petty offense, punishable only by a fine. *See* 720 Ill. Comp. Stat. 535/7. This distinction provides another point of dissimilarity, but weighs in the defendant's favor as probative evidence that the air rifle offense is less serious in the eyes of state lawmakers. However, the state legislature's classification of crimes is not dispositive; the application of the Guidelines is a matter of federal law. *See Booker,* 71 F.3d at 688-89.

The sentencing judge ordered Staples to pay a $280 fine, an indication that the offense was deemed minor, but the underlying conduct for which the defendant was sentenced weighs most heavily in this analysis. In this case, a comparison of the conduct weighs strongly in favor of treating the weapons conviction differently than disturbing the peace. The disorderly conduct statute is aimed at annoying and disruptive actions, such as calling in false fire alarms, making unreasonable noise, urinating in public, inciting a fight and a variety of other harassing and threatening behaviors. Staples' crime went beyond this, potentially putting at serious risk the safety

of the public by shooting at a vehicle with a weapon. Trains, even the cargo variety, are operated and inhabited by people, and the danger of serious injury from shooting at a train is obvious. The list of offenses in § 4A1.2(c)(1) does not include "discharging a weapon" for a good reason: It is a dangerous and serious behavior that need not be treated for sentencing purposes as lightly as "disorderly conduct," "fish and game violations" and "insufficient funds check." *See* U.S.S.G. § 4A1.2(c)(1). Staples' conviction for discharging a weapon was in fact more serious than disturbing the peace and was properly included in his criminal history.

### 2. The Suspended License Conviction

█ Section 4A1.2(c)(1) does not count driving while license suspended as an offense for purposes of the criminal history calculation, unless the defendant was sentenced to a year probation or imprisonment of thirty days. The Guidelines indicate that to count as a sentence of imprisonment, the defendant must have "actually served a period of imprisonment on such sentence." U.S.S.G. § 4A1.2 application note 2.

Staples received a two-level increase related to his conviction in 1997 for driving on a suspended license, which had been suspended after his conviction for driving under the influence of drugs. In 1998, Staples was serving a 250–day sentence for a probation violation related to a domestic battery conviction. After his release from jail on the probation violation, he pleaded guilty to the suspended license charge and was sentenced to 250 days in jail with credit for time served on the probation violation charge. Staples now claims that the 250–day sentence on the license conviction should not count because he was sentenced to "time previously served" and did not actually serve any of his sentence for driving on a suspended license. The question is whether time "actually served" includes "time previously served." We review this question *de novo*. *See McClanahan*, 136 F.3d at 1149.

The plain language of § 4A1.2(c)(1) indicates that a conviction is counted if the "sentence was . . . a term of imprisonment of at least 30 days." *See* U.S.S.G. § 4A1.2(c)(1). According to the PSR, Staples' sentence was "250 days jail, $300 fine and costs." Neither the Guidelines nor Staples' sentence make a distinction as to how or when the defendant must serve the sentence, such as receiving time off for good behavior, surrendering voluntarily at some future date or getting credit for time spent awaiting trial. The simple meaning of the Guidelines language is to count any sentence "of at least 30 days," and this section is unconcerned with how or when the sentence "of at least 30 days" is served so long as it is a "term of imprisonment." The sentencing judge may have agreed that Staples had already served the required time and therefore released him, but the judgment that he serve 250 days in jail stood.

Staples looks to the application notes for a definition of "sentence of imprisonment," which he finds in Application Note 2. But as the government points out, that note specifically references two Guidelines sections dealing with suspended sentences, *see* U.S.S.G. § 4A1.2(a)(3), (b)(2), which in this situation are very different from a sentence crediting time already served. With a suspended sentence, the offender may never spend a day in jail. The sentence hangs over his head as a way to ensure compliance with the terms of probation or other court orders. Credit for time served evinces the court's determination that the offender must spend some time in jail but has already served that time, either awaiting trial or on some other offense. It is a way to avoid excessive or duplicative punishment but does not reflect the court's determination that this offense is so minor that no jail time is warranted.

In *United States v. Atkinson*, 15 F.3d 715, 721 (7th Cir.1994), we considered whether a sentence of time served awaiting trial counted as time "actually served." The defendant had been sentenced to four

years, but the judge suspended the term except for the seventy-seven days already served. We held that the "plain language of the Sentencing Guidelines" directed that the seventy-seven days counted as the applicable prison term, but the suspended term did not. *Id. Atkinson* was slightly different from this case in that the defendant here spent the "time served" on a different charge, but the principle is the same: Time served is real time and time suspended is not.

Staples looks to the Fourth Circuit case *United States v. Stewart*, 49 F.3d 121, 124 (4th Cir.1995), for the proposition that time served is not an imposed sentence. *Stewart* however is inapplicable. In that case, the defendant had spent twenty-four days in jail awaiting a parole revocation hearing, but his parole ultimately was not revoked and he was not reincarcerated. The twenty-four days were not punishment and did not reflect the seriousness of his offense, since no offense was found. It was, like pretrial detention, an administrative detention to ensure that the offender showed up for court. The Fourth Circuit held that Stewart's time served could not be counted as a sentence of imprisonment because it was "administrative in nature" and not punishment. *Id.* at 125. The court in *United States v. Latimer*, 991 F.2d 1509, 1517 (9th Cir.1993), likewise refused to count as incarceration the time spent awaiting a parole revocation hearing and placement in a community treatment center, because this was not a reflection of the seriousness of a crime in the way that imprisonment is. Had Staples been held without bail while awaiting trial, that time could not be counted as a sentence of imprisonment, but being given credit for time served on another offense is a different story. It reflects the seriousness of the offense and appropriately should be counted as a qualifying term of imprisonment for purposes of § 4A1.2(c)(1).

### III. Conclusion

In sentencing Staples and Brown, the district court correctly assessed the seriousness of their weapons conviction in 1995 and enhanced their criminal histories by one point. Furthermore, Staples cannot now complain "time served" for a past offense somehow means something other than he served time for a past offense. Accordingly, we AFFIRM the sentences of both Staples and Brown.