In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3680

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS J. SUMNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 40079--J. Phil Gilbert, Judge.

ARGUED APRIL 10, 2001--DECIDED September 7, 2001


  Before COFFEY, ROVNER and DIANE P. WOOD,
Circuit Judges.

  ROVNER, Circuit Judge.  Thomas J. Sumner
pled guilty to three counts of
distributing cocaine, in violation of 21
U.S.C. sec. 841(a)(1). Although Sumner
was charged with distributing a total of
9.4 grams of powder cocaine (which is
equivalent under the Sentencing
Guidelines to 1.88 kilograms of
marijuana), the district court sentenced
him based on an additional distribution
of 57.6 grams (about two ounces) of crack
cocaine, under the relevant conduct
provision of the Guidelines. Two ounces
of crack translate to an astonishing
1,213.72 kilograms of marijuana
equivalent under the Guidelines, and
Sumner's sentencing range rose from 8-to-
14 months to 121-to-151 months. Because
Sumner is 76 years old, this is a
significant difference. The district
court sentenced Sumner to 132 months of
incarceration. He now challenges his
sentence on the grounds that the
government did not meet its burden of
showing that his distribution of crack
cocaine was sufficiently related to his
offense of conviction, and thus should
not be included as relevant conduct.
Because the district court did not make
adequate findings tying the crack sales
to the offense of conviction, we vacate
and remand for resentencing.

I.

Sumner was arrested in his home after selling cocaine to a confidential informant on three separate occasions in September 1999. In addition to the 9.4 grams of cocaine that Sumner sold to the informant, the police seized more powder cocaine and 34.4 grams of marijuana from Sumner's residence. After waiving his Miranda rights, Sumner told an FBI agent that he had been selling cocaine for some time. He estimated that he sold an ounce of cocaine each month between January 1998 and July 1998, and that he sold an equal amount between April 1999 and September 1999. Although he later disputed the dates and amounts of his admitted crack dealing, the district court ultimately found that Sumner also told the agent he sold two ounces of crack in the winter of 1997. He told the agent that he voluntarily stopped selling crack when one of his customers smoked the substance in his presence and had a seizure. Because three different drugs were involved (cocaine, crack cocaine and marijuana), the district court converted all of the amounts into marijuana equivalents. The Guidelines treat crack much more harshly than powder cocaine or marijuana, and the effect on Sumner's sentencing range was significant.

Sumner pled guilty without a plea agreement in place. A probation officer prepared a Presentence Investigation Report ("PSR"), detailing Sumner's admissions to the agent, and calculating the amount of drugs used for sentencing. According to the PSR, Sumner began purchasing quarter ounce quantities of crack in the winter of 1997. He bought and sold one-fourth of an ounce of crack each week for approximately two months. At some point, he voluntarily ceased selling crack and decided to sell powder cocaine instead. He told authorities that he did not sell marijuana but kept it in his house for guests. Sumner objected to the PSR, claiming that he never told the agent he sold two ounces of crack; rather, he claimed he bought 7 grams of crack, sold 4 grams and then returned the other 2 grams to his supplier after the seizure incident. He also maintained that he stopped selling drugs during a period of time that he was driving a bus for a living. He contested Paragraphs 14

and 15 of the PSR, which described his sales of crack and powder cocaine at various times, contending that the information was without sufficient indicia of reliability to support its probable accuracy. The probation officer responded that the information was accurate because it was supplied by Sumner himself during a voluntary post-arrest interview. The court ultimately adopted the probation officer's position. Paragraph 24 of the PSR details the calculation of the amount of drugs distributed, and Sumner filed the following objection to Paragraph 24:

The defendant objects to Paragraph 24 of the presentence report and suggests that the relevant conduct should be based on seven grams of crack cocaine, six ounces of powder cocaine, and 34 grams of marihuana.

Addendum to Presentence Report, at 3. Again citing Sumner's voluntary post-arrest interview, the probation officer responded that "[t]he defendant's relevant conduct includes 56.7 grams of crack cocaine, 396.9 grams of powder cocaine, and 34.3 grams of marihuana." Id. Although Sumner lodged a number of other objections to the Presentence Report, none are relevant to the issues he now raises on appeal.

  At his sentencing hearing, Sumner represented to the court that, other than the objections filed by his attorney, there were no other errors, corrections, alterations or additions that he wished to make to the PSR. After the trial judge remarked that most of Sumner's objections were related to statements Sumner allegedly made to law enforcement, Sumner's attorney summarized his objections to the PSR thusly:

There is no plea agreement. Essentially correct, Your Honor, in terms of summarizing what the objections are. The objections go to the relevant conduct, the amount of crack cocaine, the amount of powder cocaine and how that would affect the sentencing. It would also go to some extent to the acceptance of responsibility and would also go toward in terms of timing whether or not he committed this offense or certain relevant conduct while he was on probation.

Sentencing Tr. at 4. When asked specifically what Sumner's position on relevant conduct was, his attorney replied,

Your Honor, our position on relevant conduct is that Mr. Sumner, it's Mr. Sumner's position that the amount of crack cocaine that's indicated in the report that's been objected to that could be attributed to him as relevant conduct ought to be 7 grams, and that the powder cocaine ought to be 6 ounces.

Sentencing Tr. at 5. In response to the government's question about where the figure of 7 grams of crack came from, Sumner's attorney responded, in relevant part,

Mr. Sumner's position and testimony would be that he sold crack cocaine in the early 90s. He possessed it, had it to sell. He had 7 grams. 3 and a half grams on two separate occasions where he distributed 4 and a half grams and gave 2 and a half grams back to the guy who fronted him, and that would be the only point in time he was involved with crack cocaine.

Sentencing Tr. at 6.

The court then held a hearing at which both Sumner and the agent who interviewed him after his arrest testified about his admissions that day. According to the agent, Sumner informed him that "in what he remembered to be possibly the winter of 1997 he had started to sell crack cocaine, and after a couple of months, he felt like he was doing bad things to people, didn't want to deal with it anymore so he switched to powder cocaine and began to sell it instead." Sentencing Tr. at 10.

In its findings, the court noted that the timing and amount of the alleged relevant conduct were both at issue:

With respect to the issues of the relevant conduct which kind of interplays in with the criminal history as to whether or not this defendant in his post-arrest statement was dealing crack cocaine and cocaine in '97 in which he would have been on probation, and if the Court finds that the--that the post-

arrest statement is valid, that the Criminal History Category of II would be appropriate. Plus the relevant conduct in terms of the amount of drugs the defendant in his post-arrest statement said that what he was selling and acquiring during that time period would be factored into the total relevant conduct.

Sentencing Tr. at 42. The court noted it was a classic battle of credibility between the agent and the defendant, that the defendant's testimony contained internal inconsistencies, and that "it's difficult for this Court to believe that this agent just pulled these numbers out of and these dates out of thin air." Sentencing Tr. at 42-43. The court found that the defendant did tell the agents the information that they put into their reports. The court concluded, therefore, that the amount of drugs for relevant conduct purposes was 1,213.72 kilograms of marijuana equivalent as found by the PSR. The court adopted the PSR in its entirety with the exception of the PSR's recommendation against a reduction for acceptance of responsibility. The court sentenced Sumner to 132 months of incarceration. Sumner appeals.

II.

On appeal, Sumner protests that the district court did not explain why any of the crack was included as relevant conduct. He asserts that the crack transactions occurred more than two years prior to the offense of conviction, lasted for at most two months, and were voluntarily terminated. Sumner also complains that there was no evidence linking the crack transactions to the offense of conviction by commonality of supplier or customers. He asks us to conclude that the crack transactions were not part of the same course of conduct or common scheme or plan as the offense of conviction and are therefore not relevant conduct. He requests that we vacate his sentence and remand so that the district court can recalculate the sentence without the 56.7 grams of crack. The government contends that Sumner waived the issue of whether the crack was part of the same course of conduct, or in the very least forfeited that issue. We may not review a waived issue and we may review a forfeited issue for plain error

only. The government maintains there was no error, plain or otherwise, in finding that the crack transactions were relevant conduct because the evidence established that Sumner was continuously involved in the distribution of drugs from the winter of 1997 until his arrest in September 1999.

A.

We consider the waiver issue first because it affects our jurisdiction to hear the appeal. Waiver is the intentional relinquishment or abandonment of a known right. United States v. Olano, 507 U.S. 725, 733 (1993). It differs from forfeiture, which is simply the failure to make a timely assertion of a right. Id. Waiver extinguishes the error and precludes appellate review. United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000). Forfeiture permits plain error review. Id. A common distinction we draw between waiver and forfeiture is that waiver comes about intentionally whereas forfeiture occurs through neglect. Id.

Before the district court, Sumner argued that, contrary to the agent's report of his confession, his sales of crack cocaine were in much smaller amounts and were remote in time from his powder cocaine dealing. In large part, he contested the timing of the sales because the government sought to prove that the crack sales occurred while Sumner was on probation for an unrelated offense. His timing argument was thus focused on which criminal history category would apply rather than whether the crack sales were too remote in time to be relevant. When the district court disagreed about the timing and amounts and credited the agent's account of the conversation, Sumner did not further object about the district court's failure to find that the crack transactions were part of the same course of conduct as the powder cocaine sales to which he pled guilty. In reviewing the record, the question of whether this failure to object to the district court's lack of findings was intentional or negligent is a close call. The government relies largely on Staples, where the defendant attempted to appeal the district court's assessment of his criminal history category. 202 F.3d at 995. The defendant was provided in advance with a copy of the PSR

recommending a criminal history category of IV. He was given an opportunity to object to the PSR before and during his sentencing hearing and did neither. Instead, his attorney reported to the court that he had not filed any objections, and the defendant had indicated to him that morning that he had no objections to the PSR. We found that this sequence of events indicated that the defendant knew he had a right to object and affirmatively decided not to. 202 F.3d at 995. This failure to object under these circumstances indicated intent, rather than ignorance or neglect, and we therefore held the defendant waived his objection to the PSR. Id. Here, of course, Sumner did object to the PSR on the grounds that the amount of crack was over-reported and the transactions were much more remote in time than represented. He did not, however, object to the district court's failure to tie the crack transactions to the offense of conviction once the district court ruled against him on the factual disputes.

The government also cited United States v. Ramsey, 237 F.3d 853 (7th Cir. 2001) in support of a finding of waiver. There, the district court enhanced Ramsey's sentence under U.S.S.G. 3B1.4 for using a minor in the commission of the offense of distributing cocaine. Before the district court, Ramsey urged the court to adopt a particular definition of "use" that would preclude application of 3B1.4 to his sen tence. The district court disagreed with his interpretation and applied the enhancement. On appeal, Ramsey argued that the term "use" in section 3B1.4 is ambiguous and the district court should have applied the rule of lenity. Ramsey conceded he did not ask the district court to apply this rule, but maintained that his failure to raise the issue below was at most forfeiture and not waiver of the issue. We disagreed because Ramsey urged the district court to adopt a particular definition, but never claimed the term was ambiguous. 237 F.3d at 862. We found this was an intentional relinquishment of a known right that precluded our review.

Sumner counters with United States v. Perry, 223 F.3d 431 (7th Cir. 2000), where we noted that we construe waiver principles liberally in favor of the

defendant. 223 F.3d at 433. Perry was charged with being a felon in possession of a gun. The government sought a four-level enhancement to his sentence because he had waved the gun at another person during an argument, an act that constituted felony criminal recklessness in violation of state law. At sentencing, the defendant argued that there had not been an altercation, and he had never waved the gun at anyone. The district court did not believe Perry's denial and applied the enhancement. On appeal, Perry claimed for the first time that he used the gun in self-defense, an affirmative defense under state law that he would have been required to prove at sentencing. We noted that we construe waiver principles liberally in favor of defendants, and found that because there was no evidence in the record that Perry was aware of his right to assert self-defense and intentionally relinquished that right, Perry forfeited rather than waived the issue. We thus applied plain error review. 223 F.3d at 433.

Another aspect to the waiver analysis on sentencing is the defendant's failure to object to the adequacy of the district court's findings once the district court has ruled on disputed factual issues. We have held that when a defendant consistently disputes an issue, and the district court does not specifically elicit objections to the adequacy of its findings, the defendant is not required to interpose a further objection to the adequacy of the district court's findings after the district court has ruled. United States v. Freitag, 230 F.3d 1019, 1025 n.7 (7th Cir. 2000). See also United States v. Patel, 131 F.3d 1195, 1201 (7th Cir. 1997). In Patel, the defendant filed written objections to the PSR and asserted throughout a lengthy sentencing hearing that he should be held responsible for less than 50 kilograms of cocaine, that he did not qualify as a supervisor or manager, and that he was entitled to a reduction for acceptance of responsibility. After the district court resolved the disputed issues, Patel failed to further object to the sufficiency of the court's findings. Because Patel consistently asserted his objections throughout the three-day sentencing hearing, and because the district court did not specifically elicit objections to the sufficiency of

its findings, we found that Patel did not waive his right to challenge the adequacy of those findings on appeal. 131 F.3d at 1201.

Reviewing the government's claim for waiver in light of this background, we cannot agree that Sumner has waived his right to appeal the sufficiency of the district court's findings on relevant conduct. Sumner consistently challenged the agent's account of his confession in two respects. First, he contended that he admitted selling at most 7 grams of crack cocaine. Second, and most importantly for the purposes of determining relevant conduct, Sumner disputed the agent's rendition of the timing of the sales. According to Sumner, he sold crack in 1992. The agent testified that Sumner admitted to selling crack in the winter of 1997. When the district court credited the agent's version of the confession, Sumner did not further challenge whether a sale in the winter of 1997 was sufficiently contemporaneous to the offense of conviction to constitute relevant conduct.

Whether Sumner's failure to object constituted a waiver rather than a forfeiture is a close call. There are two ways to read Sumner's objections to the PSR and his objections at the sentencing hearing. First, he may have been conceding that the sale of crack was relevant conduct, and was contesting only the amount of crack at issue. This is the view the government urges us to adopt. Second, he may have been contesting whether the crack sales were relevant at all given their remoteness in time. Under this second scenario, he conceded only the fact that he sold 7 grams of crack in the early 1990s, without conceding that these transactions were part of the same course of conduct as the offense of conviction. As in Patel, the record does not reveal that Sumner knowingly waived his right to challenge the sufficiency of the district court's findings on the relevant conduct issue. Construing waiver principles liberally in favor of the defendant as we must under Perry, this failure was at worst a forfeiture of the issue, a failure to make a timely assertion of a right. See also United States v. McClellan, 165 F.2d 535, 552-53 (7th Cir. 1999), cert. denied, 526 U.S. 1125 (1999) (defendant's mere failure to

object on a specified ground during sentencing hearing results in plain error review).

B.

Because Sumner forfeited the issue, we review for plain error only. "Plain" in this context is synonymous with clear or obvious. At a minimum, this means the error must be clear under current law. Olano, 507 U.S at 734. Moreover, the error must affect substantial rights. In other words, it must be prejudicial, and must have affected the outcome of the district court proceedings. Id. The defendant bears the burden of persuasion with respect to prejudice. Id. The law was clear in this circuit at the time of Sumner's sentencing that when a district court aggregates drug quantities arising from charged or uncharged relevant conduct, the court should explicitly state and support, either at the sentencing hearing or preferably in a written statement of its reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense. United States v. Bacallao, 149 F.3d 717, 720 (7th Cir. 1998). However, where it is clear that the district court took into consideration and adopted the facts contained in the PSR, as well as the government's reasoning concerning those facts, we have upheld the court's decision to treat the uncharged activities as relevant conduct, despite the lack of express findings. Id. But when a court relies entirely on the PSR to make its relevant conduct findings, the PSR must explain how the purported relevant conduct is part of the same course of conduct or common scheme or plan as the offense of conviction. Bacallao, 149 F.3d at 721.

"Two or more offenses are part of a common scheme or plan when they are 'substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.'" United States v. Acosta, 85 F.3d 275, 281 (7th Cir. 1996) (quoting U.S.S.G. sec. 1B1.3(a)(2), Application Note 9). In assessing whether two or more offenses are part of the same course of conduct, the court should consider factors that point to a strong relationship between

the uncharged conduct and the offense of conviction, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity between the uncharged acts and the offense of conviction. Acosta, 85 F.3d at 281. When one of these factors is weak or absent, a stronger showing of the others will support a finding of relevant conduct. Id. We must look, then, at the PSR and at the sentencing hearing to determine if the court made the requisite findings on the record.

At Sumner's sentencing hearing, the court resolved several disputed fact issues against Sumner. The court found that Sumner sold two ounces or 57.6 grams of crack, rather than the 7 grams Sumner claimed. The court also found that he sold the crack in the winter of 1997 rather than at some time in 1992. The court adopted the PSR in its entirety with the exception of a part relating to acceptance of responsibility, which is not at issue here. The court made no express finding on the record that the sales of crack were part of the same course of conduct or common scheme or plan as the sales of powder cocaine to the confidential informant. There is no discussion of the factors of similarity, regularity, or temporal proximity. We look next at the PSR to determine if there is adequate support for the relevant conduct finding there. The PSR, including the Addendum detailing Sumner's objections and the probation officer's response to the objections, reveals that Sumner began selling crack in the winter of 1997, and that his source was Troy Ash. PSR at para. 14, Addendum at 2, 5. The PSR states that Sumner did not like the effect crack had on his customers so he voluntarily stopped selling it and began selling powder cocaine instead. PSR at para. 14. Troy Ash continued to be his source for drugs until Ash was arrested in August 1998. PSR at para. 15. Sumner sold powder cocaine from January to July 1998. PSR at para. 24. He found a new source in July 1999 and began once again buying and selling powder cocaine at that time. PSR at para.para. 23-24. The PSR made no finding regarding what Sumner meant by "winter 1997," which could refer to January 1997 or December 1997. There is no discussion in the PSR about the similarity, regularity, or temporal proximity of the uncharged acts and the

offense of conviction, other than what we have cited here.

This failure to explain the connection between the uncharged conduct and the offense of conviction was erroneous under well established law. See Acosta, 85 F.3d at 280; Bacallao, 149 F.3d at 720-21. That does not resolve the appeal, however, because Sumner bears the burden of showing that the court's failure to explain was prejudicial, that it affected the outcome of the district court proceedings. According to Sumner, there was a significant temporal gap between the uncharged conduct and the offense of conviction, there was evidence that he voluntarily ceased the uncharged activity, the uncharged conduct involved a different drug than the offense of conviction, and there was no showing of a common geographical location, common customers, common supplier, common victims, accomplices or modus operandi. Sumner points out that this uncharged conduct didn't just enhance his sentence; it established the sentence because the drugs charged in the offense of conviction amounted to less than 0.2% of the amount of drugs for which he was held accountable. The government counters that there was no gap between the cessation of crack sales and the commencement of powder cocaine sales. The government premises this assertion on an assumption that the winter 1997 sales occurred in late 1997 rather than early 1997. But there are no findings in the record to support this assumption. Without temporal proximity, the government must make a stronger showing of the other factors, such as regularity and similarity of the acts. Again, the record is thin. The difference in Sumner's sentence was significant. Without the uncharged conduct, he faced a sentence of 8 to 14 months' imprisonment. With the uncharged conduct, his sentencing range jumped to 121 to 151 months, with the district court resting on 132 months as the final sentence. This approaches the scenario we have cautioned against, where the uncharged conduct so influences the sentence that it becomes a case of the tail wagging the dog. United States v. Morrison, 207 F.3d 962, 968 (7th Cir. 2000). We believe that Sumner has adequately demonstrated prejudice.

III.

We are not holding that the district court may not sentence Sumner for relevant conduct. To the contrary, we are merely holding that if the district court wishes to do so, it must make adequate findings on the record tying the uncharged conduct to the offense of conviction. Because the district court did not do so here, and because the defendant has demonstrated that he was prejudiced by this failure, we vacate and remand for resentencing consistent with this opinion.

VACATED AND REMANDED.