**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kayode C. WILLIAMS, Defendant–
Appellant.**

No. 01–2780.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 2001.

Decided Dec. 19, 2001.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

## ORDER

The district court sentenced Kayode C. Williams to 48 months' incarceration after he pleaded guilty to one count of possessing a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1). On appeal Mr. Williams argues that (1) his guilty plea was not voluntary because the court rushed him into making it and did not adequately apprise him of the consequences of his plea, and (2) the court erred by denying his request for a downward departure based on his status as a deportable alien. We affirm.

In January 2001 Mr. Williams agreed to sell 100 grams of heroin to an informant. On January 23, Mr. Williams and the wired informant met in Mr. Williams's car at a Chicago White Castle parking lot (under the watchful eye of federal law enforcement officials) to consummate the

transaction. After a brief conversation, the informant signaled for the agents to arrest Mr. Williams. As the agents approached, Mr. Williams fled in his car and was apprehended after a two-block chase. The agents arrested Mr. Williams and searched his car, discovering two plastic bags containing 99.9 grams of heroin.

Mr. Williams filed a motion to suppress the heroin as the product of an unlawful search, which the district court denied without an evidentiary hearing. During a March 14 status hearing, defense counsel informed the court that Mr. Williams wanted to change his plea to guilty. Defense counsel told the court that "we can reach a plea agreement with the government . . . [w]e just need time for him to sit down with the government to give some information." Defense counsel asked for one week to accommodate a meeting with the government and the judge responded that she would be "unavailable next week." Defense counsel replied that Mr. Williams would enter a blind guilty plea and work out the details at a later time.

After determining that Mr. Williams was competent to enter a guilty plea, the district court asked him if he had enough time to discuss his plea with his attorney. Mr. Williams said no. The court then ordered a recess to allow Mr. Williams additional time to confer with his attorney. The hearing reconvened 30 minutes later, at 9:30 a.m. The court first noted that the Assistant United States Attorney had jury selection scheduled for a different case at 10:00 a.m. that morning. The judge also told the parties that she had a 10:00 a.m. appointment, but stated that "[w]e can proceed and see how far we get. I'm not sure if we'll be able to do that because I don't want to rush Mr. Williams." The court asked Mr. Williams if he had been afforded enough time to talk to his attorney. Mr. Williams said yes. The court

then proceeded with the plea colloquy and accepted his plea.

The probation officer recommended a two-level upward adjustment in Mr. Williams's offense level under U.S.S.G. § 3C1.2 for reckless endangerment during flight from arrest. Mr. Williams objected, and also requested a downward departure under *United States v. Farouil,* 124 F.3d 838 (7th Cir.1997), on the ground that his status as a deportable alien would result in exceptional hardship in his conditions of confinement. Mr. Williams also requested a downward departure under U.S.S.G. § 5K2.20 on the ground that his conduct was aberrant. In addition Mr. Williams asked the court to consider a downward departure based on a combination of these two factors.

During the sentencing hearing, the district court sustained Mr. Williams's PSR objection and declined to impose a two-level upward adjustment for reckless endangerment during flight. The court calculated Mr. Williams's offense level to be 23 with a criminal history category of I, yielding a guidelines range of 46–57 months. The court then denied Mr. Williams's requests for downward departures based on aberrant behavior and status as a deportable alien. The court sentenced Mr. Williams to 48 months' incarceration, three years' supervised release, and imposed a $100 special assessment.

Mr. Williams raises two issues on appeal. First, he contends that the district court violated his due process rights by allowing him only 30 minutes to consult with his attorney before pleading guilty and by failing to adequately inform him of various consequences of his guilty plea under Federal Rule of Criminal Procedure 11. Second, Mr. Williams argues that the court misapplied the law in denying his

request for a downward departure based on his status as a deportable alien.

■ Mr. Williams argues that the district court rushed him into pleading guilty, but the record does not support his claim. First, Mr. Williams erroneously suggests that the court allowed him only 30 minutes to talk with his attorney prior to his plea. Mr. Williams, however, had three weeks to discuss his plea with counsel and apparently did so before the March 14 hearing.

■ In addition the district court took appropriate measures to ensure that Mr. Williams had been provided enough time to discuss his plea with counsel. Mr. Williams initially told the court that he had not been given enough time to confer with his attorney, and the court appropriately ordered a recess to allow him additional time to discuss his impending change of plea. Although the judge advised the parties that she had an appointment at 10:00 a.m. and that the AUSA had to leave in 30 minutes, she also stated that she did not want to rush Mr. Williams. The court then made sure that Mr. Williams had received sufficient opportunity to talk with his attorney:

> THE COURT: I was asking you if you had had enough time to speak with your attorney, Mr. Thomas, just before we recessed, and that was about, what, half an hour ago or so? Have you had enough time to talk to him now?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Without disclosing to me what you've talked about, have you told him everything you know about the circumstances of this case?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Are you satisfied with the advice he's given you and the efforts he's made on your behalf?
>
> MR. WILLIAMS: Yes.

Mr. Williams's representation under oath that he had sufficient opportunity to discuss the case with his lawyer is presumed truthful. *See United States v. Standiford,* 148 F.3d 864, 868 (7th Cir.1998). In short the court did not rush Mr. Williams into pleading guilty.

Mr. Williams next argues that the district court violated Rule 11 by failing to properly advise him of his appeal rights or how the applicable sentencing guidelines would be applied to his sentence. Mr. Williams's challenges, however, are not persuasive, whether this court reviews the district court's handling of his plea for plain error, *see United States v. Driver,* 242 F.3d 767, 769 (7th Cir.2001), *petition for cert. filed,* —— U.S.L.W. —— (U.S. May 16, 2001) (No. 00–10033), or harmless error, *see United States v. Vonn,* 224 F.3d 1152, 1155 (9th Cir.2000), *cert. granted,* 531 U.S. 1189, 121 S.Ct. 1185, 149 L.Ed.2d 102 (2001).

■ Mr. Williams argues that the district court did not make clear that his guilty plea foreclosed him from raising as an issue on appeal the denial of his motion to suppress. But contrary to this assertion, the court did indeed explain to Mr. Williams that he would be giving up his right to challenge on appeal the denial of his motion to suppress:

> THE COURT: Do you understand that if at trial you were found guilty, you would have the right to an appeal on all of the issues that you raised before trial, during trial, and after trial?
>
> MR. WILLIAMS: Yes.
>
> THE COURT: Including the ruling on your motion to suppress, you have the right to appeal that. Do you understand that by pleading guilty you give up your rights to an appeal on all of the issues that normally you would have before trial, after trial, [and] during trial.

MR. WILLIAMS: Yes.

THE COURT: You would still have the right to an appeal as to any sentencing issue you raise, but that's it. Do you understand?

MR. WILLIAMS: Yeah.

The court's explanation was not ambiguous.

■ Likewise, the district court satisfied Rule 11(c) by informing Mr. Williams that the sentencing guidelines would apply to his sentence. Rule 11(c)(1) requires a sentencing court to inform criminal defendants that it must "consider any applicable sentencing guidelines"–it does not require courts to spell out specific sentence possibilities that may result. *Damerville v. United States*, 197 F.3d 287, 289 (7th Cir. 1999). Although the court did not inform Mr. Williams that it may depart from the guidelines in some circumstances, this omission was harmless–the court did not depart from the applicable range.

■ Mr. Williams also challenges the district court's denial of his request for a downward departure based on his status as a deportable alien. In *Farouil*, 124 F.3d at 847, and later in *United States v. Guzman*, 236 F.3d 830 (7th Cir.2001), this court held that a sentencing court has discretion to consider whether a defendant's deportable status will result in unusual or exceptional hardship in his conditions of confinement that would justify a downward departure on that basis. A sentencing court's finding that a defendant is *ineligible* for a departure is a legal issue subject to *de novo* review. *United States v. Chavez–Chavez*, 213 F.3d 420, 421 (7th Cir.2000). But if a district court concludes that a defendant is eligible *but undeserving* of a departure, *i.e.*, exercises its discretion, then the decision is unreviewable. *Id.*

■ Mr. Williams claims that the district court did not understand that it had discretion to depart, but that is simply untrue. The court considered his request under *Farouil* but decided that he was undeserving of a departure:

THE COURT: As far as the request for departure based on Mr. Williams' status as a deportable alien, I'm not persuaded that his conditions of confinement would be unreasonably affected by his immigration status or that he would be subjected to harsher treatment as compared to similarly situated people who traffic in 100 grams of heroin and attempt to flee after the transaction. . . .

The court considered his request and stated that it was not persuaded that a departure was warranted–a clear exercise of discretion that cannot be reviewed by this court.

Mr. Williams makes another related argument–that the district court erred by not considering his request for a departure based on combined factors, namely, his deportability status and his assertion that his drug crime was an episode of aberrant behavior. But the court explicitly rejected departures on both grounds, and this court does not have jurisdiction to second guess these determinations.

■ The government raises one issue with respect to this appeal, arguing that *Farouil* should be overturned. The government's position is problematic on several fronts. First, this court does not have jurisdiction to consider the argument because the district court exercised its discretion and rejected the departure. Second, the government did not argue to the district court that *Farouil* should be overturned and thus forfeited the issue on appeal. *See United States v. Staples*, 202 F.3d 992, 995 (7th Cir.2000) (holding that forfeiture, which is a simple failure to raise an issue, merits plain error review). The government cannot establish that the court plainly erred by considering the departure;

indeed this court recently reaffirmed *Farouil* in *Guzman,* which recognized that alien deportable status may be the basis for a departure for drug crimes. Both *Farouil* and *Guzman* hold that in drug cases (unlike violations of the immigration laws) there is no reason to believe that the sentencing guidelines have accounted for status as a deportable alien. Thus, the court did not commit plain error by considering Mr. Williams's deportability status as a basis for departure.

AFFIRMED.