# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2871

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RENÉ JAIMES-JAIMES,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-017-001—**J.P. Stadtmueller**, *Judge.*

———————

ARGUED JUNE 16, 2004—DECIDED MAY 4, 2005

———————

Before COFFEY, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* René Jaimes-Jaimes pleaded guilty to one count of being present in the United States unlawfully after having been deported, 8 U.S.C. § 1326(a). The parties in their written plea agreement, and the probation officer in her presentence report, all concurred that the sentencing court should increase the offense level by 16 levels because Jaimes (as he calls himself) previously had been convicted of a "crime of violence." *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court accepted that position and determined that Jaimes's total offense level was 21 and that his sentencing range was 70 to 87 months. The court

sentenced him to 78 months' imprisonment. On appeal, however, Jaimes argues that the district court committed plain error by imposing the 16-level increase; Jaimes now contends that his prior offense is an "aggravated felony" but not a "crime of violence" under § 2L1.2, and so he should have been given only an eight-level increase. *See* U.S.S.G. § 2L1.2(b)(1)(C). The sentence imposed by the district court was indeed plainly erroneous, and we now vacate and remand for resentencing.

## I. BACKGROUND

Jaimes was deported to Mexico in 2001, but in January 2003 he turned up in jail in Milwaukee, Wisconsin, after being arrested for a drug offense. Jaimes has several prior convictions, including a Wisconsin state conviction for "discharging a firearm into a vehicle or building," Wis. Stat. § 941.20(2)(a), an offense he concedes qualifies as an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(F).

The offense guideline applicable to Jaimes's immigration violation was amended in November 2001 to provide that a prior conviction for an "aggravated felony" warrants an eight-level increase in offense level, but that a conviction for one of several types of more serious felonies warrants either a 12-level or a 16-level increase. *See* U.S.S.G. § 2L1.2(b)(1); *United States v. Vargas-Garnica*, 332 F.3d 471, 474 (7th Cir. 2003). The previous guideline had provided that a conviction for *any* aggravated felony triggered a 16-level increase, whereas the Guidelines now provide that a defendant with a conviction for an aggravated felony receives an increase of between 8 and 16 levels depending on whether his conviction also meets the requirements for one of the higher increases. *Vargas-Garnica*, 332 F.3d at 474. In making the change, the Sentencing Commission observed that the previous system "sometimes result[ed] in disproportionate penalties," and thus it decided to impose "a more graduated

sentencing enhancement . . . depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." U.S.S.G., App. C, amend. 632 (effective Nov. 1, 2001). As relevant here, the Guidelines now provide that a 16-level increase is warranted if the defendant's prior conviction qualifies as a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

The plea agreement recommended a 16-level increase because of the parties' assumption that Jaimes had incurred a "pre-deportation conviction of a crime of violence."[1] In the presentence report, the probation officer likewise recommended a 16-level increase for a crime of violence. At sentencing the district court read aloud the total offense level, criminal history score, and imprisonment range recommended in the presentence report and asked Jaimes's counsel, "[D]o you and your client accept those guidelines?" Counsel responded: "We do. However, we reserve the right and opportunity to argue for a departure, Your Honor."

## II.  ANALYSIS

### A.  Waiver versus forfeiture

We must first determine whether Jaimes waived or merely forfeited any challenge to the probation officer's recommendation that he receive a 16-level increase. Waiver is the intentional relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Jacques*, 345 F.3d 960, 962 (7th Cir. 2003). Forfeiture is the failure to timely assert a right. *Olano*, 507 U.S. at 733; *Jacques*, 345

---

[1] The plea agreement also states that Jaimes is eligible for the 16-level increase because he previously committed a "firearms offense," U.S.S.G. § 2L1.2(b)(1)(A)(iii), but the presentence report makes no mention of this and the government does not defend the sentence on this ground, so we ignore it.

F.3d at 962. Waiver precludes appellate review, but forfeiture permits review for plain error. *Olano*, 507 U.S. at 733-34; *Jacques*, 345 F.3d at 962.

The government contends that Jaimes waived his right to challenge the calculation of his sentence and directs our attention to *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). According to the government, we held in *Staples* that defense counsel's representations that he had discussed the presentence report with his client and that they had no objections constituted a waiver of a guidelines calculation included in the report because counsel's statements evidenced that the defendant knew at the time of sentencing that he could object to that particular sentencing calculation but affirmatively decided not to object. *See id.* Here, the government contends that when Jaimes's attorney told the district court at sentencing that he had no objections to the probation officer's calculation of the guideline range, Jaimes likewise waived any challenge to the sentencing calculation at issue in this appeal.

We do not read *Staples* as rigidly as the government urges. Although counsel's representations obviously are significant, a lawyer's statement at sentencing that the defendant does not object to anything in the presentence report does not inevitably constitute a waiver of the defendant's right to challenge on appeal any guideline calculation included in that report. *See United States v. Jimenez*, 258 F.3d 1120, 1124 (9th Cir. 2001). We indeed have found waiver in circumstances where defense counsel made a representation at sentencing similar to the one Jaimes's counsel made to the district court here, *see United States v. Martinez-Jimenez*, 294 F.3d 921, 923 (7th Cir. 2002); *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001); *Staples*, 202 F.3d at 995, but we do not read our cases as establishing an inflexible rule that every objection not raised at a sentencing hearing is waived.

The touchstone of waiver is a knowing and intentional decision. *See United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001) ("Put another way, a forfeiture is an accidental or negligent omission . . . while a waiver is the manifestation of an intentional choice not to assert the right."). There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forego another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present. *See id.* (finding argument waived because failure to raise it in district court "was clearly a strategic decision rather than a mere oversight"); *United States v. Si*, 343 F.3d 1116, 1128 n.3 (9th Cir. 2003) (sentencing argument was waived where defendant did not object for "tactical reasons"); *United States v. Joaquin*, 326 F.3d 1287, 1291 (D.C. Cir. 2003) (declining to find waiver where nothing suggested that defense counsel "made a conscious, strategic decision" not to object); *United States v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1997) (defendant made a "calculated decision" not to object, and therefore waived argument); *United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995) (characterizing forfeiture as "a matter of oversight" and waiver as "a tactical matter").

But in this case we cannot conceive of any strategic reason for Jaimes not objecting to the extra eight-level increase in his offense level, and the government offers us no sound reason—indeed no reason at all—why Jaimes would have opted to bypass a challenge to the 16-level adjustment. We have previously suggested that an argument should be deemed forfeited rather than waived if finding waiver from an ambiguous record would compel the conclusion that counsel necessarily would have been deficient to advise the defendant not to object. *See Richardson*, 238 F.3d at 841. That is the case here, since the only plausible possibility—if the 16-level increase is indeed erroneous—is that Jaimes's attorney was deficient in electing not to challenge it.

Defense counsel was not alone in his oversight, for no one involved with Jaimes's sentencing—including the Assistant United States Attorney who now so vigorously argues waiver, the probation officer, or even the district judge—appears to have recognized that Jaimes's prior offense might not be a "crime of violence."

We conclude that Jaimes's failure to object to the 16-level adjustment resulted from an oversight by defense counsel and was therefore "accidental rather than deliberate." *Id*. Waiver principles should be construed liberally in favor of the defendant, *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001); *Cooper*, 243 F.3d at 416; *United States v. Perry*, 223 F.3d 431, 433 (7th Cir. 2000), and there is nothing in the record before us to suggest that Jaimes had any idea that the 16-level increase might be erroneous. Forfeiture occurs because of neglect while waiver happens intentionally. *See Sumner*, 265 F.3d at 537. There is no indication that Jaimes intended to relinquish his right to be sentenced at the lower offense level, and we can conceive of no tactical reason why he would choose to be sentenced at a higher offense level. As we are left with the conclusion that Jaimes's failure to challenge the 16-level adjustment could have resulted only from an oversight by his attorney, we find that he forfeited, rather than waived, his sentencing challenge.

### B.   Sixteen-Level Adjustment

Because Jaimes forfeited his argument concerning the calculation of his sentence by failing to raise it in the district court, our review is for plain error. *See Olano*, 507 U.S. at 732; *Cooper*, 243 F.3d at 415; *see also* Fed. R. Crim. P. 52(b). Under a plain error standard, an error must be clear or obvious and affect substantial rights. *Sumner*, 265 F.3d at 539. Even then, we are not required to correct the error but may exercise our discretion to do so if the error " 'seri-

ously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Kibler*, 279 F.3d 511, 514 (7th Cir. 2002) (quoting *Olano*, 507 U.S. at 732).

We begin with the question of whether the increase was erroneous. The Guidelines state that a defendant should receive a 16-level adjustment if he has a prior conviction for a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). A "crime of violence" is defined in § 2L1.2 as:

> [A]ny of the following: murder, manslaughter, kid-napping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.*

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (emphasis added). Jaimes has not been convicted of any of the enumerated crimes, so only the latter part of this definition concerns us. Notably, "crime of violence" is defined more narrowly in § 2L1.2 than in other contexts because the definition does not encompass acts involving the use of force against property or acts that merely pose a risk of harm to another person. *See United States v. Calderon-Pena*, 383 F.3d 254, 261 (5th Cir. 2004) (en banc); *United States v. Pimentel-Flores*, 339 F.3d 959, 965-66 & nn.7-8 (9th Cir. 2003); *cf. United States v. Gardner*, 397 F.3d 1021, 1022-23 (7th Cir. 2005) (U.S.S.G. §§ 2K2.1 and 4B1.2(a)(2) both define crime of violence to include conduct that "presents a serious potential risk of physical injury to another"); *Bazan-Reyes v. INS*, 256 F.3d 600, 612 (7th Cir. 2001) (crime of violence, as defined in 18 U.S.C. § 16(b), applies to "crimes in which the offender is reckless with respect to the risk that intentional physical force will be used in the course of committing the offense").

The government contends that Jaimes's conviction for "discharging a firearm into a vehicle or building" qualifies as a crime of violence. The elements of that offense are that the defendant: (1) "discharged a firearm"; (2) "intentionally shot the gun into a building" (or vehicle); and (3) "should have realized that there might be a human being present in the building" (or vehicle). *State v. Grady*, 499 N.W.2d 285, 287 (Wis. Ct. App. 1993); *see also* Wis. Stat. § 941.20(2)(a). These statutory elements of § 941.20(2)(a) impose no requirement that the state prove, as an element of the offense, that the defendant used, attempted to use, or threatened to use physical force "against the person of another." *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). Indeed, the state need not prove that another person was present in the vehicle or building, or even anywhere near the targeted object; all that is necessary given the elements of the offense is that the state prove that the defendant should have realized that there *might* be a person present. *See Grady*, 499 N.W.2d at 287. The Wisconsin statute requires that the defendant use force by shooting a gun, *see id.*, but it provides that the force be directed against a vehicle or a building, not "against the person of another" as required by § 2L1.2.

The government in its brief concedes that "the elements of Section 941.20(2)(a) do not explicitly require [that] a trier of fact conclude a defendant used or threatened the use of physical force against the person of another." But the government contends that the firing of a gun into a potentially occupied building nevertheless "poses an immediate, severe and inherent risk to the safety of another." The government is no doubt correct, but the definition of a "crime of violence" in § 2L1.2—unlike that term's definition in § 4B1.2(a)(2)—does not encompass "conduct that presents a serious potential risk of physical injury to another." *See Calderon-Pena*, 383 F.3d at 261. We are unwilling to assume, as does the government, that the omission of this

language from § 2L1.2 carries no significance. The definition in § 2L1.2 requires the use, attempted use, or threatened use of force against the person of another, and the government concedes that the elements of the offense do not satisfy this standard.

The government also argues that the district court could have determined that Jaimes committed a crime of violence by looking beyond the elements of the offense and considering the facts that led to his conviction. But examining Jaimes's underlying conduct is inappropriate because a crime of violence must have *as an element* the use, attempted use, or threatened use of force against another, U.S.S.G. § 2L1.2, cmt. n.1(B)(iii), so a sentencing court generally may not look beyond the elements of the offense for which the defendant was convicted. *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003); *see also United States v. Shannon*, 110 F.3d 382, 384 (7th Cir. 1997) (en banc). No exception to that general rule applies here. A district court may look to the underlying conduct if the statute under which the defendant was convicted is ambiguous in that there are multiple ways to violate a particular statute, some of which would qualify for the adjustment and some of which would not. *See Flores*, 350 F.3d at 670. That is not the case with § 941.20(2)(a), so an examination of Jaimes's conduct is not permissible. The elements of § 941.20(2)(a) do not satisfy the definition of a "crime of violence" in § 2L1.2, and accordingly the application of the 16-level increase was erroneous.

But it is not enough for us to find that Jaimes's sentence resulted from error because, under a plain error standard, we must also conclude that the error was plain, that it affected Jaimes's substantial rights, and that it seriously affected the fairness, integrity, or public reputation of judicial proceedings before we may exercise our discretion to correct it. *Kibler*, 279 F.3d at 514. We believe that correcting the error in Jaimes's sentence is warranted. First, the error was

plain. " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano*, 507 U.S. at 734. The error here is obvious because, as even the government concedes, there is no question that the elements of Jaimes's prior conviction fail to satisfy the definition of a "crime of violence" set forth in § 2L1.2. Second, the error affected Jaimes's substantial rights because the imposition of the 16-level in-crease—rather than an eight-level increase—caused his imprisonment range to more than double from 30 to 37 months to 70 to 87 months. Finally, we elect to exercise our discretion to correct the error because we believe the error impacted the fairness of the proceedings. Jaimes may have failed to notice the sentencing error, but so did defense counsel, the Assistant United States Attorney, the proba-tion officer, and the district court judge, and we conclude that it would be unjust to place the entire burden for these oversights on Jaimes by permitting him to serve an exces-sive prison sentence.

## C.  Impact of *United States v. Booker*

Shortly after argument in this appeal, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004). We granted Jaimes's motion to suspend this appeal pending the Supreme Court's decision on the applicability of *Blakely* to the federal sentencing guidelines. The Court has now held that the Guidelines are to be considered advisory rather than mandatory. *See United States v. Booker*, 125 S. Ct. 738, 756-57 (2005). *Booker* does not change our conclusion that plain error occurred in this case because the district court, interpreting the Guidelines as mandatory, sentenced Jaimes under an incorrect offense level that more than doubled his range of imprisonment. Because the Guidelines are now advisory, the district court must consider the cor-rect guideline range when determining a new sentence, but may "tailor the sentence in light of other statutory concerns as well." *Id.* at 757.

### III.  CONCLUSION

The district court committed plain error by imposing a 16-level increase under U.S.S.G. § 2L1.2. Accordingly, Jaimes's sentence is VACATED, and this case is REMANDED to the district court for resentencing.


A true Copy:

　　　　Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*