HAMILTON, Circuit Judge,
dissenting in part.
I agree that we should affirm Burns’ conviction. I would also affirm his sentence. The majority errs by reversing the below-guideline sentence on an issue that Burns simply did not present to the district court — whether he caused the full $3.3 million loss for which he was held accountable at sentencing. That was the total amount lost by the twelve customers whom Burns convinced to ■ invest in the larger Ponzi scheme.
The majority actually errs twice. First, in the district court, Bums waived the issues he pursues for the first time on appeal. He actually agreed that $3.3 million was the correct figure for the loss amount, restitution, and forfeiture. He even said that the $3.3 million restitution order would be “just punishment” for his offense! Dkt. No. 146 at 19-20. Burns also made strategic use of the $3.3 million figure, making it the basis of his principal argument for leniency: he asked for probation instead of incarceration so that he could repay the victims. That’s textbook waiver.
Second, even if Burns merely forfeited his objection on the causation issue, there was no plain error. Burns’ substantial rights were not affected by the absence of a more explicit finding on causation. The evidence easily supports such a finding. We should not find “plain error” for the mere lack of a finding that the judge was not asked to make, at least when the evidence will support such a finding.
I doubt that this unusual reversal signals a lasting shift in our approach to sentencing appeals. The majority’s approach, though, will encourage defendants to search records for new issues to raise on appeal. That is inconsistent with our usual and sound approach to sentencing appeals. “The sentencing in the district court is the main event. The parties prepare and identify the issues they wish to address.” United States v. Lewis, 823 F.3d 1075, 1083 (7th Cir. 2016) (finding waiver of issues first raised on appeal).
When available objections are not raised, the parties and the court should not and need not waste time on issues that are not actually disputed. The sentencing process here was thorough. Judge Kocoras addressed — thoughtfully and in detail — the many issues the parties actually raised *692 before him. We do a-disservice to district judges by reversing and remanding for supposedly failing to make findings they were not asked to make on issues that were not disputed. I respectfully dissent from the reversal and remand of Burns’ sentence.
I. Waiver of Objections to Loss Amount, Restitution, and Forfeiture ;
The majority concedes that Burns “never articulated the proximate-cause objection that he makes here.” Ante at 685. In fact, he not only failed to object to the loss amount, he affirmatively embraced it. Burns and his counsel submitted numerous objections to the presentence report. Yet in both the written objections and at the hearing, they embraced the $8.3 million figure and used it to recommend what would have been a remarkably lenient sentence, 60 months of probation.
•A. The Presentence Investigation Report and Bums’ Objections
The waiver here was as thorough as one is likely to see. It began with the presen-tence investigation report and Burns’ written objections-to it. Written objections are prepared with time to consider all issues and to select which to pursue. See, e.g., United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000) (finding waiver; there is "stronger case for. waiver” when defendant is given “advance notice of the PSR’s contents and an opportunity to object before and during the sentencing hearing,” yet fails to object).
The presentence investigation report recommended a total loss amount of $3.3 million, the amount lost by the twelve victims who worked with Burns. (¶ 26) This amount led to an 18-level increase in the offense level. (141) The report recommended the same figure for restitution. (¶¶ 121, 144) Burns’ counsel advised the probation office that he did not dispute the loss amount. (¶ 40)
Burns filed detailed written objections to the presentence investigation report. He objected to the inclusion of victim impact statements in the report. He asked the court to sentence him under a proposed guideline amendment that would adjust the loss ranges for inflation and reduce the adjustment from 18 to 16 levels. He objected to a sentencing adjustment for abuse of a position of trust. Yet he did not challenge the $3.3 million loss amount in any way.
Burns then outlined his sentencing request: 60 months of probation. His principal argument was that probation would enable him to repay his victims the $3.3 million. He made this claim several times in his objections to the presentence report. Dkt. No. 146 at 13, 19-20. His argument reflects a strategic choice to rely on the full loss amount to support his request for probation instead of incarceration. Burns even called the $3.3 million restitution— which he-now challenges on appeal — just punishment for his crime: “Requiring Mr. Burns to pay back the $3.3 million in restitution, coupled with the lifelpng hardships that he will experience as a result of being a convicted felon, are just punishments for his offense.” Id. at 19-20.[1]
In his objections to the presentence report, Burns also argued for leniency be *693 cause of his relatively minor role in the larger USARMS scheme, He illustrated this twice by saying the $3.3 million his victims lost was only ten percent of the larger $37 million fraud:
This scheme, in which Mr. Burns was not a knowing participant, netted approximately $37 million from 130 investors. There are 12 victims that the government attributes to interacting with Mr. Burns, who lost a total of $3.3 million. This loss attributable to Mr. Burns is a mere 10 percent of Durmaz and Pribilski’s scheme. Mr, Burns was not a necessary or integral part of the scheme because the Partners were doing just fíne raising investment funds before they hired him.
Dkt. No. 146, at 18.[2] This was not an objection to the $3.3 million loss amount. Indeed, this ten-percent argument depended on his accepting the $3.3 million amount. The defense obviously considered a challenge to the loss amount and chose a different approach.
B. The Sentencing and Forfeiture Hearing
Burns waived his appellate objections again at the hearing on sentencing and forfeiture. Three times at the beginning of the hearing, Burns’ counsel agreed to the $3.3 million figure. Sent. ■ Tr. 2-3. The judge first asked whether there was any objection to the preliminary order of forfeiture for $3,3 million. Burns’ counsel responded: “Well, we agree with the number. The only question is whether or not he is going to' be responsible for the entire amount, which, I guess, is h restitution issue, or if it will be apportioned.” Id. at 2.
Saying his “only question” • was about restitution fell far short of an actual objection for any purpose. It also implicitly accepted the $3.3 million figure as the correct forfeiture amount. After the court rejected apportionment, Burns’ counsel agreed that $3.3 million “is the total amount of the loss.” .Id. at 3. The judge then said: “there is a commonality to the forfeiture .order, as well as the ..upcoming consideration of the restitution order. Those numbers are the same and they cover the same conduct.” Burns’ counsel responded: “We agree that that is the correct number, Judge.” Id. Burns thus agreed that $3.3 million was the correct figure for all three purposes: loss amount, restitution, and forfeiture.[3]
*694 After sorting through the objections the parties actually raised, the judge summed up his guideline findings and gave the parties a further chance to object:
So, here is what we have. We have the Guidelines and what they produce. It is a Level 29 and a Criminal History Category of I. That is the end result. And in that calculation, everyone is in agreement, I think — “everyone,” meaning the two parties here — there were 12 victims and the loss amount for these victims was $3,383,113. I think that amount is not in dispute.
Id. at 22. The defense knew how to object. It remained silent when the judge said the amount was “not in dispute.”
Later in the hearing, when Burns himself addressed the court, he followed through on the written argument and again relied on the full $3.3 million loss amount to ask for leniency. He claimed that sentencing him to “any type of incarceration will only serve to delay my ability to start repaying restitution.” Id. at 87. Although the “restitution of $3.3 million is daunting” he would “go to work” and “willingly make repayment to all of these people.” Id. He argued that allowing him to work while on probation would “serve a much better purpose ... than having me sent to some minimum security camp, where I will be of no use to anyone.” Id. His counsel had made the same argument. Id. at 51.
C. The Majority’s Theory to Avoid Waiver
To avoid these unusually extensive signs of waiver, the majority relies on two passages in the sentencing transcript: the question about Burns’ responsibility for the full restitution amount, and a virtually incoherent variation on the ten-percent argument discussed above. Neither offers a sound basis for excusing Burns’ repeated failure to object and his affirmative embrace of the $3.3 million figure.
As quoted above in note 3, at the beginning of the hearing, Burns’ lawyer asked whether he would be responsible for the entire restitution amount or if the amount would be apportioned. The question was only about restitution, not forfeiture, and as the dialogue continued, the court concluded that that the amounts for forfeiture and restitution “are the same and cover the same conduct.” Burns’ lawyer responded: “We agree that that is the correct number, Judge.” Id. at 3. Missing from this exchange is anything recognizable as an objection. Yet the majority finds that the mere question “necessarily implied *695 that he should have to pay less than $3.3 million,” ante at 686, which leads the majority to conclude that Burns did not accept the $3.3 million figure or make strategic use of it.
Lawyers and judges, in federal courts understand the difference between questions and objections. A lawyer who does not like an answer to a question can register an objection if there is one. Here there was none. Yet the majority finds that the judge erred by not treating the mere question about possible apportionment as if it were a signal that Burns wanted to raise every possible objection to the amount used for guideline loss, restitution, and forfeiture.
That is not a sound approach to appellate review. Where counsel and client, select issues to pursue at sentencing, as happened here, the selection of issues waives other issues that might well have distracted from the issues presented. See Staples, 202 F.3d at 995 (finding waiver of sentencing issues not raised in written objection to presentence report); see also United States v. Jaimes-Jaimes, 406 F.3d 845, 848 (7th Cir. 2005) (“There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forgo another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present.”); see also United States v. Hible, 700 F.3d 958, 961 (7th Cir. 2012) (collecting cases).[4]
After concluding that Bums did not accept the $3.3 million restitution and forfeiture, the majority turns to the guideline loss amount, finding that Burns showed he was not accepting the $3.3 million loss amount based on a statement “inartfully articulated” during the sentencing hearing. Ante at 686. To understand the statement, some context is helpful. Twice in Burns’ response to the presentence report, he attempted to minimize his role in the larger USARMS scheme by saying that the $3.3 million his victims lost was only ten percent of the larger $37 million fraud. Dkt. No. 146 at 15, 18. His counsel made this claim again in the sentencing hearing: “And when you look at the total loss of all of the victims in general versus the amount that is proportionate to Mr. Burns, it is less than 10 percent of everything. So, Mr. Burns was not an integral part of anything, in our opinion, because this scam was operating successfully long before Mr. Burns came along.” Sent. Tr. 43.- Again, this was not an objection to the loss amount. It was an effort to illustrate Burns’ minor role.
Burns’ counsel later offered a confusing variant • of the ten-percent argument for the first time. The majority relies on this statement:
I think, also, the Court could look to the percentage of the whole under this factor, the fact that this whole scheme, you know, netted — I don’t know the number off the top of my head, but 30-something million. And he is attributable for about three million. So, that is 10 percent. So, *696 if your Honor takes the Guidelines of the 10 percent amount, the loss amount would be, roughly, yeah, about 300-and-some-thousand. So, that would equate to an Offense Level 7 — Base Offense Level 7 — plus 12 for the monetary amount.
Sent. Tr. 53-54. In context, this mystifying statement seems to be a confused variant of the ten-percent minor-role argument Burns had already made several times. The judge had resolved the guideline calculation issues much earlier in the hearing. Id. at 22. Even the most charitable interpretation of this confusing statement should not override the extensive record of Burns’ agreement with arid strategic use of the $3.3 million amount. The waiver was dear. •
II. Plain-Error Review
• After overlooking Burns’ waiver, the majority errs further by applying the plain-error standard so liberally that it is as if the defendant had presented to the district court the same argument he presents now on appeal. That is not plain-error review.
The late Justice Scalia explained for the Supreme Court the reasons for correct and rigorous application of the standard:
If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. “No procedural principle is more familiar to this Court than that á ... right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.” Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; “anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpre-served error would be fatal.” United States v. Padilla, 415 F.3d 211, 224 (C.A.1 2005) (en banc) (Boudin, C.J., concurring)..
This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts' and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from “ ‘sandbagging’ ” the court — remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.
Puckett v. United States, 556 U.S. 129, 134, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (applying rigorous plain-error review to sentencing issue); accord, e.g., United States v. Arenal, 500 F.3d 634, 639 (7th Cir. 2007) (applying rigorous plain-error review to challenge to factual basis for guilty plea; timely objection could have cured arguable error). Those observations apply directly to Burns’ new challenge to the loss calculation used in his sentencing.
The majority notes, though, that “we have remanded cases when the district court improperly applied the causation analysis [for loss amount] and when the district court .did not address causation at *697 all.” Ante at 688, citing United States v. Whiting, 471 F.3d 792, 802 (7th Cir. 2006), and United States v. Domnenko, 763 F.3d 768, 776-77, (7th Cir. 2014). True enough, but in those cases the defendants had raised the same objections in the district court that they raised on appeal. Neither case was decided on plain-error review.
The majority also points out that the words- “reasonable foreseeability” and “proximate cause” do not appear in the sentencing transcript. That’s right. Those words do not appear because the defense did not argue there was any problem with foreseeability or causation with the $3.3 million loss. Judge Kocoras sensibly focused his energy on the many issues the parties actually argued. (The sentencing transcript is 108 pages.) He did not waste anyone’s time on issues that the parties did not argue. See Lewis, 823 F.3d at 1081 (judges and others in criminal -justice system “do not need to waste time treating matters that are not disputed as if they were”).
Even assuming no waiver, so that plain-error review would be available here, Burns has not shown that his substantial rights were affected or that a failure to set aside his sentence would seriously affect the fairness, integrity, or public reputation of the judicial proceedings, let alone a miscarriage of justice. The burden is on Burns to show the court that the claimed error affected the outcome. United States v. Olano, 507 U.S. 725, 734-35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This ordinarily requires a “specific showing of prejudice,” id. not just speculation about the possibility of a different outcome.
This is not a case where the guideline calculation was actually wrong, as it was in Molina-Martinez v. United States, 578 U.S. -, 136 S.Ct. 1338, 194 L.Ed.2d 444 (2016) (finding plain error and ordering new sentencing where guideline range was in fact wrong). All that is supposedly missing here is a supporting factual finding on an issue that was not disputed. The majority itself recognizes that the district court may well find on remand that Burns’ fraud was a proximate cause of the victims’ $3,3 million loss. Ante at 689.
That outcome is both likely and entirely appropriate. It also shows there was no plain error here. Read in its entirety, the sentencing- transcript shows that the court believed Burns was a proximate cause of his victims’ entire losses. The judge said that Burns’ claims that he was unaware of the larger Ponzi scheme were “not true.” Sent. Tr. 89. “I do not think you stand before me as an innocent man who was euchred — You are too sophisticated. You are too sharp a businessman to have fallen for that.” Id. at 90. And while Burns may not have been the “architect” of the larger scheme, he “must have got suspicious somewhere along the way,” and instead of walking away he chose to “become their best salesman.” Id. at 93. The majority does not address these findings in its plain-error review.
The government did not argue that Burns had actual knowledge of the larger Ponzi scheme, but the judge made clear at the sentencing hearing that the evidence showed that Burns knew the supposed investments in Turkish government bonds were too good to be true. While the judge did not use the phrase “proximately caused,” he clearly found that Burns was foreseeably responsible for the losses. At best, Burns deliberately closed his eyes to the warning signs and then lied to lure prospective investors. Those findings based on circumstantial evidence of Bums’ state of mind are more than sufficient to support findings of proximate cause and reasonable foreseeability for the full $3.3 million.
Hindsight, and the leisurely, pace of appeal show there was a little more room for *698 Burns to have argued that the forfeiture amount, as distinct from the identical guideline loss and restitution amount, should have been the amount he was paid Instead of the amount his victims lost. It is easy to understand why Burns and his lawyers chose not to start an idle debate of the issue. The court was already ordering restitution of the same $3.3 million. There was nothing to gain by arguing whether forfeiture should be measured under 18 U.S.C. § 981(a)(2)(A) or (B).
' In sum, the record here shows that Burns and his lawyers focused carefully on sentencing issues. They selected the issues they wanted to pursue. They chose not to dilute them by pursuing other potential but unpromising issues, including the proximate cause objection at the heart of the majority’s decision. While Burns was disappointed by the results of the strategy, his conduct amounts to waiver. We should not overlook the waiver and indulge Burns’ appellate makeover of his strategy and case. Nor was there any plain error. I would affirm the judgment of the district court in all respects.

. Here is the full context of Bums' written request for leniency:
John. [Burns] also has to face the daunting task of paying more than $3,3 million dollars in restitution to the victims in this case. If Mr. Bums is incarcerated for any period of time, he will not be able to make any mean-ingjul contribution to that restitution. Mr. Burns is 55-years-old. Incarcerating him for the 87 months that the probation officer recommends will bring any restitution payments to a screeching halt, If he is sentenced to probation, he can begin making restitution payments immediately because *693 he is currently employed. Further, the prospects of him finding a job at age 61 (the approximate age he will be upon release if this Court follows the probation officers' recommendation of an 87-month sentence and Mr. Burns receives the Drug and Alcohol Program) are improbable. Understandably, the bitter victims want to see someone go to jail as retribution for their losses. But perhaps if given the choice, they would rather have Mr. Bums working and making restitution payments to them. Requiring Mr. Bums to pay back the $3.3 million in restitution, coupled with the lifelong hardships that he will experience as a result of being a convicted felon, are just punishments for his ofíense.
Dkt. No, 146 at 19-20 (emphasis added).

.. Burns' counsel made the same claim earlier in the memorandum: "This scheme netted approximately $37 million from a total of 130 investors. The amount attributable to Mr. Burns is $3,383,183, which .is less than ten percent of the total scam.” Dkt, No. 146 at 15.

. Here is the full exchange at pages 2-3 of the sentencing transcript:
THE COURT: Good morning. Is there any objection to the preliminary order of forfeiture?
MR. LOPEZ [Counsel for Burns]: Judge, I have not had an opportunity really to respond to it. The only issue that we had—
THE’COURT: I thought you agreed with their number? [1] ■■
MR, LOPEZ: Well, we agree with the number. The only question is whether or not he is *694 going to be responsible for the entire amount, which, I guess, is a restitution issue, or if it will be apportioned.
THE COURT: I do not think it is apportionment. This is an indictment solely against Mr. Burns. These properties were counts of the indictment. And, so, whether anyone else may be responsible, Mr. Burns would be responsible for the entirety. That is the way I see it. Do you see it that way?
MR. HEDGES [Prosecutor]: Yes, your Hon- or.
THE COURT: They are not asking for any larger sum, other than what was tried before me.
MR. LOPEZ: Right. That is the total amount of the loss. I understand that.
THE COURT: Here.
MR. LOPEZ: Here. But I guess the restitution is a different issue.
THE COURT: Well, the restitution that is proposed is the same figure.
MR. HEDGES: That is correct, your Honor.
THE COURT: Yes. So, there is a commonality to the forfeiture order, as well as the upcoming consideration of the restitution order. Those numbers are the same and they cover the same conduct.
MR. LOPEZ: We agree that that is the correct number, Judge.
THE COURT: All right. Then I am going to grant that motion, so we can dispense with that.

. We apply the same approach to waiver in the selection of issues on appeal, where we do not insist on extra evidence of strategy. When lawyers select the issues to argue on appeal, we treat as waived issues that might have been raised but were not. See, e.g., Smeigh v. Johns Manville, Inc., 643 F.3d 554, 565 (7th Cir. 2011) ("[Defendant] acknowledged that he didn’t raise vicarious liability below and wasn't raising it on appeal. [Defendant] therefore has waived this argument.”); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (a "skeletal ‘argument’ ... does not preserve a claim” on appeal); Sere v. Board of Trustees of Univ. of Illinois, 852 F.2d 285, 287 (7th Cir. 1988) ("We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief.”).